## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

ANGELI D. MILLER                                                    PLAINTIFF

V.                          No. 4:23-CV-00598-KGB-PSH

MARTIN J. O'MALLEY,[1] Commissioner,
Social Security Administration                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief
United States District Judge Kristine G. Baker. Either party may file written
objections to this Recommendation, and those objections should be specific and
should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk
within fourteen days of this Recommendation. If no objections are filed, Chief Judge
Baker can adopt this Recommendation without independently reviewing the record.
By not objecting, parties may also waive the right to appeal questions of fact.

I.   **Introduction:**

On January 14, 2021, Angeli Miller applied for Title II and Title XVI
disability benefits, alleging disability beginning April 24, 2020. (Tr. at 14). Her

---

[1]Martin J. O'Malley was appointed to serve as the Commissioner of the Social Security
Administration effective December 20, 2023. He has been substituted as the appellee in
place of former Commissioner Kilolo Kijakazi pursuant to Fed. R. App. P. 43(c)(2).

claim was denied both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. During the hearing, Miller amended her alleged onset date to August 29, 2020. (Tr. at 63). On October 19, 2022, the ALJ denied Miller's application. (Tr. at 25). Thereafter, the Appeals Council denied her request to review the decision. (Tr. at 1). The ALJ's decision stands as the final decision of the Commissioner.

Miller now seeks judicial review, and for the reasons stated below, the Court should affirm.

## II.     The ALJ's Decision:

The ALJ found Miller had not engaged in substantial gainful activity since her alleged onset date. (Tr. at 16). At step two of the sequential five-step analysis,[2] the ALJ found Miller had the following severe impairments: right carpal tunnel syndrome post carpal tunnel release, migraine headaches, chronic obstructive pulmonary disease ("COPD"), osteoarthritis, schizophrenia, anxiety disorder, hepatitis C, and polycythemia. (Tr. at 17). After finding that none of these

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Miller would be able to perform light work with the following limitations: (1) she could not perform more than frequent handling and fingering duties; (2) she could not be exposed to extreme hot or cold temperatures; (3) she could not be exposed to more than a moderate noise environment; (4) she could not be exposed to concentrated vibration; (5) she could not be exposed to even moderate fumes, odors, or gases; (6) she could not be exposed to hazards; (7) she could not drive or operate dangerous machinery; (8) she could not work in the food or beverage industry; (9) she could understand, remember, and carry out simple but not complex instructions; (10) she could not interact with the general public; and (11) she could only manage occasional changes to workplace setting. (Tr. at 19).

Miller testified at the hearing regarding her claim of disability. (Tr. at 65). The ALJ found that Miller was unable to perform any past relevant work. (Tr. at 24). Relying upon the testimony of a vocational expert ("VE"), the ALJ found that a significant number of jobs existed in the national economy for someone Miller's age with her education, work experience, and residual functional capacity ("RFC"). *Id*. These jobs included merchandise marker, router, and photocopy machine operator. (Tr. at 25). The ALJ thusly concluded that Miller was not disabled. *Id*.

### III.   <u>Discussion</u>:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

It is not the task of the Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the Commissioner because there is contradictory evidence in the record. The test is whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Miller*, 784 F.3d at 477.

#### B. Arguments on Appeal

Miller raises several arguments on appeal related to the ALJ's evaluation of her case, including that the ALJ failed to properly evaluate Miller's subjective complaints of pain and the objective medical evidence; that the RFC formulated by

the ALJ did not sufficiently account for Miller's limitations; and that the evidence regarding the number of jobs Miller could perform was insufficient. As fully explained below, substantial evidence in the record supports the ALJ's decision, and no legal error has been found.

### 1. Subjective Complaints of Pain & Medical Records

Miller first argues deficiencies in the ALJ's analysis of Miller's subjective complaints of pain. Specifically, Miller contends that the ALJ improperly discredited her complaints, relying instead on medical reports showing Miller's impairments were only mild to moderate. Miller argues that the words "mild," "moderate," "fair," and "good" within her medical records have a different meaning related to her conditions and that those words fail to accurately explain her medical impairments and their impact on her ability to work. Miller maintains that her wrist impairment required surgery and that she was hospitalized for mental-health treatment, supporting her claims of disabling pain.

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "[T]he

duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints *for good reason*, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (emphasis added).

In this case, the ALJ found that Miller's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with and not wholly supported by the objective evidence. (Tr. at 22). At the hearing in August 2022, Miller testified that she previously worked at the deli counter of a food store and as a cashier at Walmart. (Tr. at 66–68). She stated that her auditory schizophrenia—that she has "had since [she] was a kid" and her "visual part [that] didn't come until 2016"—cause problems for her work. (Tr. at 68–69). She reported seeing "people that nobody else sees," but it "mainly happens at night." (Tr. at 69). She had mental-health counseling once a month. (Tr. at 70). As for her post-surgery right wrist, she stated that she "still can't feel" it, that she has pain around the scar, and that she "can't really support any weight." *Id*. Regarding pulmonary concerns, Miller used two inhalers and did an updraft every four to six months. *Id*. She testified that she's taking her medications as prescribed and that in the past, there were

6

periods where she could not get in to see a counselor and went without her mental-health medication. (Tr. at 71). She has found the medication to be somewhat effective, seeing fewer imaginary people on Thorazine, but she also stated that even when she does see people who are not real, she is "kind of used to it." *Id*. Miller testified that she no longer used street drugs or alcohol. (Tr. at 72). She lived with her husband, but she stated that she was able to take care of her day-to-day needs, like personal hygiene, showering, and dressing. (Tr. at 73). She helped her husband with laundry, but "can't really much fold them because of my hands." (Tr. at 74). She stated that she made her own meals and went to the store when her husband could go with her, because she did not like being in public. *Id*.

In a function report that Miller filled out in February 2021, she stated that her schizophrenia, PTSD, and anxiety were "mainly what keeps [her] from working." (Tr. at 358, 360). She stated that her ability to work was hampered by hearing music all the time and seeing people who were not real. (Tr. at 351). She stated that she could not drive at night because of the visions. *Id*. She did not identify any issues with dressing or bathing herself, but she stated that her wrist limited her ability to put her hair in a ponytail, lift pans, and use a can opener. (Tr. at 352). She made her own meals daily and washed dishes. (Tr. at 353). She described taking care of all her own financial affairs. (Tr. at 354). She described daily walks on her property. (Tr. at

355). She stated that her right wrist fell asleep at night and that her wrist was in "constant pain." (Tr. at 359).

In reviewing the severity of Miller's mental impairments, which included schizophrenia and an unspecified anxiety disorder, the ALJ found that she had moderate limitations in each of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. at 18). The ALJ noted that Miller did not have at least two marked limitations or one extreme limitation. (Tr. at 19). The ALJ found that Miller did not need special reminders to take care of her personal needs or grooming and that despite reporting that she had memory issues, she exhibited no memory impairment on multiple occasions. (Tr. at 18). Miller maintained a live-in relationship with her boyfriend, dressed herself, bathed herself, prepared meals, performed household chores, and drove a car. *Id*. Further, she had no documented issues with maintaining attention or concentration. *Id*. Miller took several medications, including risperidone, Valium, Invega, Paxil, clonazepam, amitriptyline, and Thorazine. The ALJ noted, however, that treatment records indicated that Miller had been noncompliant with her mental-health medication at times. (Tr. at 687, 1106). Moreover, the ALJ pointed to examination notes showing no significant abnormalities aside from being anxious; her schizophrenia and anxiety were characterized as stable. (Tr. at 689). Although she was hospitalized for a couple

8

of days in August 2021 for allegedly threatening to kill her boyfriend, records indicated that her medications were effective and that her acute symptoms had "greatly improved." (Tr. at 949). She was discharged in stable condition. *Id*. Overall, the ALJ found that although Miller appeared restless and anxious at times, medical records indicated she was generally well developed, well nourished, alert, and oriented with an appropriate mood and affect. (Tr. at 21). The ALJ cited several examinations documenting no visual or auditory hallucinations, good progress with her mental-health goals, and a fair prognosis. *Id*.

Regarding her physical impairments, the ALJ noted that Miller underwent a right carpal tunnel release in September 2020. (Tr. at 20, 448–49). She continued to complain of pain in December 2020, stating it was worse than it had been prior to surgery. (Tr. at 1187). At an examination in January 2021, she reported paresthesia in her fingers and ulnar-side wrist pain. (Tr. at 648). She exhibited some scar tenderness but normal motion and motor function. *Id*.  A few months later, in June 2021, she again reported numbness in her right hand. Upon examination, she exhibited no active synovitis or joint effusion and again had full range of motion in all joints. (Tr. at 1155). She did have some tenderness in her right wrist. *Id*. A nerve conduction study done in November 2021 revealed moderate right carpal tunnel syndrome. (Tr. at 1225). Her doctor recommended she revisit the surgeon who performed her release or see another surgeon, but Miller declined. *Id*. Nevertheless,

Miller had revision surgery for her right carpal tunnel in December 2021. (Tr. at 1327). When she was seen two months later, she again complained of numbness and tingling in her right hand. (Tr. at 1338). The doctor noted that her recovery would be a "slow process" but that she had "excellent range of motion" and improved strength. *Id*.

The ALJ also addressed Miller's polyarthritis, migraines, COPD, hepatitis C, and secondary polycythemia. (Tr. at 21). In June 2021, Miller reported pain in her joints. (Tr. at 890). She was prescribed medication, and she reported it controlled her pain "fairly well." *Id*. Regarding migraine headaches, the ALJ found that Miller had been prescribed medication, but that she had not reported to an emergency room due to symptoms, and that she had not exhibited any neurological abnormalities. (Tr. at 21). Likewise, her COPD was treated with medication, including an inhaler. *Id*. Despite her COPD diagnosis, the ALJ noted that Miller had continued to smoke cigarettes, indicating her condition was not as severe as alleged. *Id*. As for the remainder of her physical impairments, Miller had been noncompliant with a referral for hepatitis C treatment, but she was scheduled to start treatment for her polycythemia. *Id*.

The ALJ found prior administrative medical findings relating to Miller's physical and mental impairments generally persuasive. (Tr. at 22–23). However, the

10

ALJ found that Miller had additional limitations based on updated medical records. (Tr. at 23).

In this case, the ALJ did not improperly discredit Miller's subjective complaints solely because they were not fully corroborated by objective medical findings. Rather, discrepancies between her categorization of the severity of her symptoms and evidence in the record was one factor the ALJ considered. The ALJ also identified non-compliance with medication, Miller's ability to perform daily activities, prior administrative medical findings establishing her functional limitations, and the effectiveness of treatment as factors in his decision. The ALJ properly considered Miller's carpal tunnel surgery in September 2020 and revision surgery in December 2021, as well as her hospitalization in August 2021, within the context of her entire medical record, which showed her mental impairments were stable and her right carpal tunnel was, at best, moderate prior to revision surgery she had in December 2021. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004); *see also Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Although Miller posits her own theory for how her "mild," "moderate," and "fair" medical conditions affect her functional abilities, this Court declines her invitation to adopt new meanings for words the ALJ gave a reasonable interpretation. As such, substantial evidence supports the ALJ's finding on this point.

## 2.  RFC

Miller next argues that the ALJ did not consider all her impairments and how those impairments exacerbate each other in determining her RFC. She contends that the ALJ's failure to give appropriate weight to her subjective complaints and to properly consider the medical evidence led to an inadequate RFC that does not account for her true functional limitations. Essentially, Miller asserts that the other errors the ALJ made—related to reviewing the medical records, evaluating her subjective complaints, and posing a hypothetical to the VE—work together to result in a deficient RFC determination.

A claimant bears the burden of establishing her RFC, which is the most she can still do despite her limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ must review all the relevant medical and other evidence in the case record when determining a claimant's RFC but is not required to include limitations that are not supported by the evidence in the record. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The mere fact that some evidence may support a conclusion opposite" to the ALJ does not allow for

reversal. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Ultimately, the RFC finding "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

The ALJ found that Miller could perform light work with the following restrictions: no more than frequent handling and fingering duties; no concentrated exposure to temperature extremes; not more than a moderate noise environment; no concentration vibration exposure; not even moderate exposure to fumes, odors, or gases; no exposure to hazards; no driving or operating dangerous machinery; no work in the food or beverage industry; no complex instructions, but can understand, remember, and carry out simple instructions; no interaction with the general public; and no more than occasional changes to workplace setting.

Despite her claim that the ALJ did not consider all her impairments, Miller fails to identify an impairment the ALJ did not consider. Moreover, she provides no explanation for her contention that the combined effect of her impairments further limits her functional abilities. In contrast, the ALJ detailed each of Miller's impairments—both severe and non-severe—in evaluating her RFC and explicitly based his RFC determination on all of Miller's symptoms. The ALJ conducted a thorough review of the objective medical evidence, prior administrative medical findings, and Miller's activities of daily living, noting inconsistencies between

Miller's complaints of disabling pain and the record. The ALJ carefully crafted a more-restrictive RFC than required by prior administrative findings to account for Miller's impairments and updated medical records. That RFC included restrictions to account for all Miller's physical and mental impairments. Although Miller may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not the court's role to reweigh the medical evidence. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). Under these circumstances, substantial evidence supports the ALJ's RFC determination.

### 3.  VE Testimony

For her final point, Miller contends that the hypothetical posed to the VE was incomplete, that the VE relied solely on a computer application to determine the number of jobs Miller could perform without doing her own statistical research, and that the VE did not account for the current unemployment rate when calculating the number of jobs Miller could perform. Using her own set of numbers, Miller provides a separate analysis for how many jobs exist in the national economy that Miller can perform.

During the hearing, the ALJ posed a hypothetical to the VE, asking her to consider a person of Miller's same age, education, work background, and RFC as outlined above. (Tr. at 80–81). The VE responded that Miller would not be able to perform her past work, but that other jobs—merchandise marker with an estimated

136,785 jobs; router with an estimated 25,152 jobs; and photocopy machine operator with an estimated 12,597 jobs—were available that Miller could perform. (Tr. at 81). During examination by Miller's attorney, the VE stated that she used Job Browser software from SkillTRAN to estimate the number of jobs. (Tr. at 84). She stated that she did not use personal theories or methods to adjust the number, because she was not versed in statistical methodology. *Id*.

 "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). An ALJ need include "only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert." *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011). "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). Here, the ALJ presented the VE with a hypothetical reflecting the impairments he found credible and supported by the evidence. Thus, Miller's claim that the ALJ's hypothetical was incomplete is without merit.

Likewise, Miller's assertion that the VE miscalculated the number of available jobs is unavailing. First, Miller fails to provide any legal support for her argument

that the VE erred by using a software program to calculate job numbers within the national economy. A similar argument based on this exact oft-used software was recently rejected, *Yielding v. Kijakazi*, No. 4:22-cv-01126-JM-JJV (E.D. Ark. 2023), and this Court is equally unmoved by Miller's attempt to claim error. Second, the ALJ need only consider whether "substantial gainful work exists in the national economy, regardless of whether such work exists in the immediate areas in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The law squarely puts the focus on the number of jobs in existence, not the number of job openings or vacancies. As such, Miller's claim of error related to the unemployment rate also fails.

**IV.** **Conclusion**:

For the reasons stated above, the Court finds that substantial evidence supports the decision that Miller was not disabled. Judgment should be entered in favor of the Commissioner.

IT IS SO ORDERED this 9th day of July 2024.

_____
UNITED STATES MAGISTRATE JUDGE